IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Cedrick Demond Smith, #332034, | ) | CIVIL ACTION NO. 9:11-2400-TMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| John B. McRee, Physician II; | ) | |
| Christina J. Black, LPN; | ) | |
| Brenda L. Williams, RNI; | ) | |
| Debra Burnett, RNI;. | ) | |
| Anita A Crawford, LPN; | ) | |
| Tarcia L. James, RNI, | ) | |
| Sgt. Holmes and IGC Ms. Holmes | ) | |
| | ) | |
| Defendants. | ) | |
| ______________________________ | ) | |

This action was filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants[1] filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on January 31, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 1, 2012, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that

[1] It does not appear that the Defendant Debra Burnett has ever been served with process. See Court Docket Nos. 21, 23, 27, 30, 32. The remaining Defendants have all been served, have answered, and have filed the above referenced dispositive motion.





if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on February 16, 2012, following which the Defendants filed a reply memorandum on February 20, 2012.

Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his Verified Complaint[3] that he is an inmate at the McCormick Correctional Institution (MCI), and that for three weeks he experienced severe anxiety attacks that in turn triggered asthma attacks. Plaintiff alleges that he takes medication for a mental health condition that is in part a cause for his anxiety, which also becomes a serious medical issue because he uses an asthma inhaler which is only ordered and issued through "medical" at the prison. Plaintiff alleges that on May 17, 2011 he had a "very bad anxiety attack which triggered an asthma attack" causing him to suffer a seizure and light stroke. Plaintiff alleges that he was taken to medical by the duty officer, staff sergeant, and lieutenant, and was "logged" within the central control booth. Plaintiff alleges that the only nurse on duty was the Defendant Williams, who advised she had spoken with the "head doctor" and had ordered him an asthma pump. Plaintiff alleges that he subsequently suffered two more anxiety attacks and was seen by medical "around the twentieth" by

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.





a Nurse Holiday and Nurse Cushion, who "dismissed [him] with no further exam or help". Plaintiff alleges that he attempted to speak to the Defendant Nurse James and another nurse named "Pea" the following day, but they "ignored [him] and walked off". Plaintiff alleges that on May 24, 2011, he began experiencing chest pains and a slight panic attack, and requested the assistance of duty Sergeant Givens and Corp. Stevens, who ignored him as well. Plaintiff seeks monetary damages, certain declaratory and/or injunctive relief, and that criminal charges be brought against each of the Defendants. Plaintiff has attached to his Complaint copies of various Inmate Request forms and/or grievances he submitted to prison officials, as well as pages from what appear to be his medical summaries from the Department of Corrections. See generally, Plaintiff's Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendants have submitted an affidavit from the Defendant Anita Crawford, who attests that she is a nurse at MCI whose duties include examining, treating and providing medications for inmates. Crawford attests that she has no recollection of ever having treated the Plaintiff, and that she has also reviewed Plaintiff's medical records and can find no indication in his records where she has ever seen the Plaintiff. Crawford further attests that, based on her review of Plaintiff's medical records, she can see nothing that would indicate Plaintiff has asthma or that he would need an inhaler, and that in any event she does not have the authority to prescribe an inhaler for an inmate, as this must be done by a physician. See generally, Crawford Affidavit.

The Defendant Brenda Williams has submitted an affidavit wherein she attests that she is a nurse who worked at MCI during the relevant time period and that she treated the Plaintiff on several occasions. Williams attests that she saw the Plaintiff on May 17, 2011, the date cited by





Plaintiff his Complaint, on an emergency basis because Plaintiff was complaining of difficulty breathing. Williams attests that security personnel had contacted the medical department stating that Plaintiff was complaining of having an anxiety attack and used an Albuterol inhaler. However, Williams attests that when she saw Plaintiff, his vital signs were normal and he was in no apparent distress. Williams attests that Plaintiff's lung sounds were clear, there was no wheezing noted, Plaintiff was not having shortness of breath, his blood pressure was 120/90, his respirations were 20, and his oxygen saturation was 100% on room air. Williams further attests that she has treated individuals having asthma attacks on a number of occasions, and that in her opinion Plaintiff was not having an asthma attack at that time, as he exhibited none of the symptoms (more particularly described in her affidavit) to warrant such a diagnosis. Williams also attests that Plaintiff has no history of asthma or of being placed an Albuterol inhaler since his admission to the SCDC, and that based on her examination of the Plaintiff and a review of his records, Plaintiff does not have asthma and does not need an inhaler.

Williams attests that Plaintiff was also seen two additional times by medical personnel on May 17, 2011 for his complaints of shortness of breath. Plaintiff was seen by a nurse, who noted that there was no inhaler prescribed for the Plaintiff, and on examination found Plaintiff's pulse, respiration, and blood pressure to all be well within normal limits; Plaintiff's lungs were clear, there was no wheezing, and his oxygen saturation was again 100%. Williams saw the Plaintiff the second time on May 17, 2011, at which time Plaintiff again had no shortness of breath, his vital signs were normal, and his oxygen saturation was 100% on room air. Williams attests that she saw Plaintiff again on May 24, 2011, at which time he was complaining of shortness of breath and difficulty breathing, but on examination Plaintiff again had normal findings and Williams attests that





Plaintiff was not experiencing an asthma attack on that date. Williams attests that she did see the Plaintiff on one additional occasion, on June 2, 2011, but that Plaintiff was at that time complaining of a sexual/anxiety problem and was not complaining of respiratory distress. She referred Plaintiff to be seen by a mental health counselor.

Williams attests that she can see nothing in Plaintiff's medical records to indicate that Plaintiff has asthma, that Plaintiff does not need an inhaler, and that in any event she does not have the authority to prescribe an inhaler for an inmate, as this must be done by a physician. Williams attests that at all times she acted within generally accepted medical practices, that Plaintiff has been provided proper medical care, and that in her opinion Plaintiff does not have a serious medical condition. See generally, Williams Affidavit.

The Defendant Christina Black has submitted an affidavit wherein she attests that she is a nurse assigned to MCI, and that she treated the Plaintiff on only one occasion. Black attests that she saw the Plaintiff on September 28, 2010, at which time Plaintiff was stating that he had cut his left arm and it was painful when he moved it. Black attests that Plaintiff refused to take Tylenol or Ibuprofen for his pain because he wanted some other type of pain medication. Black attests that she cannot prescribe medications, and that in any event in her opinion Plaintiff did not need any additional medication for pain at that time based on his refusal to even try Tylenol or Ibuprofen to see if it provided him relief. Black further attests that if an individual is in pain, his blood pressure will generally be elevated, and that Plaintiff's blood pressure was 121/82, which was inconsistent with a person complaining of severe pain. Black attests that Plaintiff's medical records indicate that she also had a telephone encounter concerning the Plaintiff on January 1, 2011, where an officer had contacted her and stated that Plaintiff was having an asthma attack. Black attests that she reviewed





Plaintiff's history and found that he was not prescribed an inhaler, and she could not see any indication that he had ever been prescribed an inhaler or diagnosed with asthma. Black attests that she also noted that Plaintiff had already been seen earlier that same day by medical personnel requesting an inhaler for asthma, at which time his vital signs were all found to be normal. Black attests that she therefore determined that Plaintiff did not need to be seen again concerning his request for an inhaler at that time.

Black further attests that she saw nothing in Plaintiff's medial records that would indicate he has asthma, that in her opinion Plaintiff would not need an inhaler, and that in any event she does not have the authority to prescribe an inhaler for an inmate, as this must be done by a physician. Black attests that she at all times acted in accordance with generally accepted medical practices, that Plaintiff has been provided proper medical care, and that Plaintiff does not have a serious medical condition. See generally, Black Affidavit.

The Defendant John McRee has submitted an affidavit wherein he attests that he is a board certified and licensed physician assigned to MCI, and that his duties including diagnosing, treating and providing medications for inmates. McRee attests that he has not seen the Plaintiff, but has reviewed Plaintiff's medical records. McRee attests that, based on his review of Plaintiff's medical records, Plaintiff was not having an asthma attack when he was seen by Nurse Williams on May 17, 2011, as his vital signs were all normal and he was in no apparent distress. McRee further attests that Plaintiff has no history of asthma or of being placed on an Albuterol inhaler since his admission the SCDC, and that based on a review of Plaintiff's medical records and findings it is his opinion that Plaintiff does not have asthma and does not need an inhaler. McRee attests that he has also reviewed the medical records and reports relating to Plaintiff being seen by medical personnel





on May 17, 2011, and that in his opinion Plaintiff was not experiencing an asthma attack and did not need an Albuterol inhaler at that time. McRee further attests that, based on his review of Plaintiff's medical records, Plaintiff was not experiencing an asthma attack on May 24, 2011.

McRee attests that Plaintiff does have a history of receiving mental health treatment, and that he has been treated for anxiety. McRee attests that, to the extent Plaintiff experiences shortness of breath or difficulty breathing, it is more likely that this is attributable to anxiety. However, McRee attest that if an individual is having an anxiety attack he would generally expect that the individual would have an elevated blood pressure and pulse rate, and that when Plaintiff has complained of difficulty breathing and has been examined, his blood pressure and pulse rate have been within normal limits. Further, if Plaintiff was having an anxiety attack, it would not be appropriate to provide him with an Albuterol inhaler, because an inhaler would elevate the heart rate even more and it therefore could potentially be harmful to the Plaintiff.

With respect to Plaintiff's mental health, McRee attests that Plaintiff is being seen by mental health personnel in the SCDC, that he does not generally treat inmates for mental health conditions, and that he defers to the mental health professionals at SCDC to provide treatment for mental health issues. McRee attests that on or about July 22, 2011, he received a telephone call from Dr. Thomas Moore, the SCDC medical director, concerning the Plaintiff, because Plaintiff had written a letter to "Dr. Wood" requesting an inhaler, and that that request had been forwarded to Dr. Moore. McRee attests that he informed Dr. Moore that Plaintiff had been seen by medical personnel on several occasions for complaints of difficulty breathing, that each time his vital signs were found on examination to be normal, that Plaintiff had no history of asthma and had never been prescribed an inhaler, and that Plaintiff's symptoms appeared to be more related to anxiety or panic attacks than





to asthma.

McRee further attests that Plaintiff was seen again by medical personnel on July 26, 2011, stating that he had "panic attacks" which caused shortness of breath, and that he had a need for an inhaler. McRee attests that the nurse explained to the Plaintiff that panic attacks are not treated with inhalers, and Plaintiff was instructed to breath into a paper bag if he felt he was beginning to have an anxiety attack. McRee further attests that Plaintiff was again seen by medical personnel on September 2, 2011, at which time Plaintiff was complaining that he had had a seizure. McRee attests that officers did not witness this seizure, but stated that about five minutes after Plaintiff reported his alleged seizure, he was cursing at the officer. McRee attests that when examined by medical personnel, Plaintiff was noted to be calm, alert and oriented x3, and that his vital signs were within normal limits, findings inconsistent with an individual having a seizure.

McRee attests that on November 18, 2011 he received a letter from the Plaintiff requesting an inhaler to help with his "anxiety attacks", and that although he did not see any indication of asthma or need for an inhaler, he sent the Plaintiff for a chest x-ray as a precaution. McRee attests that Plaintiff claimed that he had long standing asthma, but that if an individual has a long standing asthma condition, there would have been changes to the lungs. McRee attests that he sent Plaintiff for x-rays to determine if there were any changes to his lungs because of his continued complaints, that x-rays were taken on November 21, 2011, and that the x-rays were normal and showed no abnormalities. McRee attests that Plaintiff does not therefore have asthma and does not need an inhaler. With respect to Plaintiff's complaint that he had an anxiety attack that triggered an asthma attack that led him to suffer a seizure and stroke, McRee attests that asthma attacks are not generally associated with or triggered by anxiety attacks, and he sees no indication that Plaintiff





has had an asthma attack while he has been incarcerated at SCDC. Furthermore, McRee attests that he sees no indication in the Plaintiff's medical records that he has had a stroke or true seizure.

McRee attests that while he has not personally examined the Plaintiff, Plaintiff has been seen by medical personnel on numerous times, that at this time he is not aware of any reason that he needs to personally see the Plaintiff, and that he will do so if such a need arises. McRee attests that he at all times has acted in accordance with generally accepted medical practices, that Plaintiff has been provided proper medical care, and that Plaintiff does not have a serious medical condition. See generally, McRee Affidavit.

The Defendant Tarcia James has submitted an affidavit wherein she attests that she is a nurse assigned to MCI, and that she treated the Plaintiff on one occasion. James attests that she saw the Plaintiff on March 28, 2011, at which time he was complaining about a rash on his penis. James attests that Plaintiff made no complaints of any kind concerning his breathing at that time, and that she has not seen the Plaintiff on any other occasions after March 28, 2011. James attests that from her review of Plaintiff's medical records, she can see nothing that would indicate that Plaintiff has asthma, and that in any event she does not have the authority to prescribe an inhaler for an inmate, as this must be done by a physician. James attests that at all times she acted in accordance with generally accepted medical practices, that Plaintiff has been provided proper medical care, and that in her opinion Plaintiff does not have a serious medical condition. See generally, James Affidavit.

The Defendant Lori Holmes has submitted an affidavit wherein she attests that she is the grievance coordinator at MCI, and that her job is to review and investigate grievances filed by inmates through the inmate grievance system. Holmes attests that she has handled numerous





grievances filed by the Plaintiff, and that in doing so she exercises her professional judgment based on the information available to her and acts in accordance with SCDC policy. Holmes attests that she has no direct involvement with Plaintiff's medical care, that she does not have any advanced medical training, and that she relies on trained medical professionals to provide medical care for all inmates. See generally, Lori Holmes Affidavit.

The Defendant Sheila Holmes has provided an affidavit wherein she attests that she is a Sergeant at MCI. Holmes attests that she does not recall having any direct dealings with the Plaintiff, that she has no knowledge concerning Plaintiff's medical care and has had no involvement with his medical care, that she does not have any advanced medical training, and that she relies on trained medical professionals at MCI to provide medical care to all inmates. See generally, Sheila Holmes Affidavit.

Finally, the Defendants have provided an affidavit from Nadine Pridgen, who attests that she is the Director of Health Information Resources at the South Carolina Department of Corrections, and that she has attached to her affidavit a true and correct copy of the Plaintiff's medical records. See generally, Pridgen Affidavit with attached exhibits [SCDC Medical Records].

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion





with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, the Court is constrained to note that, other than Brenda Williams and Tarcia James, none of the other Defendants listed in the caption of Plaintiff's complaint are mentioned in the text of his complaint, nor or any allegations made against these other individuals. Therefore, even if this case is to otherwise proceed, all of the named Defendants other than Williams and James are entitled to dismissal. Gomez v. Toledo, 446 U.S. 635, 640 (1980)[In order to state a cause of action under § 1983, a Plaintiff must allege that 1) a named defendant deprived him or her of a federal right, and 2) did so under color of state law.]; Redando Waste Systems, Inc., v. Lopez-Freytes, 659 F.3d 136, 140-141 (1st Cir. 2011)[Defendants dismissed where "no set of allegations specific to any defendant comes anywhere near to stating a valid claim" and noting that one defendant was not even mentioned beyond the caption].

Further, in order to proceed with his claim under § 1983 for denial of medical care, the evidence must be sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106





(1976); Farmer v. Brennen, 511 U.S. 825, 834-835 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). The evidence does not support such a finding in this case. The Defendants have submitted affidavits from a board certified physician as well as several licensed nurses attesting to the extent and quality of medical care Plaintiff received, as well as a copy of Plaintiff's medical records. All of these medical professionals attest that Plaintiff received the appropriate standard of care for his complaints, and the medical record provided to the Court fails to reveal any inference of any medical professional being deliberately indifferent to Plaintiff's serious medical needs, nor does any of this evidence give rise to a genuine issue of fact as to whether Plaintiff suffered any injury or aggravation of a medical condition based on the decisions made.

By contrast, Plaintiff only generally alleges in his Complaint that medical personnel refused to provide him the treatment he desired, but has provided not evidence, medical or otherwise, to support his claim.[4] Plaintiff's own unsupported opinion about what his medical condition was or what treatment he should have received is not sufficient to sustain his claim. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202

---

[4]Specifically, the exhibits Plaintiff has attached to his Complaint, which include portions of his medical records as well as grievances and/or Inmate Request Forms filed with the prison, do not constitute evidence sufficient to create a genuine issue of fact that anyone was deliberately indifferent to his serious medical need. While these exhibits certainly document Plaintiff's complaints and the fact that he wanted additional treatment, Plaintiff's own self diagnosis about what his medical needs were is not evidence sufficient to survive summary judgment. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's own self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].





(2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]. While Plaintiff obviously does not agree with the extent and nature of the medical care he received, he cannot simply allege that he did not received adequate medical care or attention, otherwise provide no supporting medical evidence, and expect to survive summary judgment, particularly when the Defendants have submitted documents and affidavits from medical professionals which refute his claims. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green, 100 Fed.Appx. at 45 (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate. However, that is not the standard for a constitutional claim. Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious



medical needs, and therefore Plaintiff's federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

February 28, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



